UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RONNIE L. HICKS,<br><br>      Plaintiff,<br><br> v.<br><br>KIM DOTSON,<br><br>      Defendant. | NO:  12-CV-5104-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 53). This matter was submitted for consideration without oral argument. Plaintiff is proceeding *pro se*. Defendant is represented by Jason D. Brown. The Court has reviewed the briefing and the record and files herein, and is fully informed.

## BACKGROUND

Plaintiff filed a First Amended Complaint in this action on January 2, 2013. ECF No. 12. Plaintiff's claims relate to time he spent incarcerated at the Airway

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 1

Heights Corrections Center (AHCC). Plaintiff alleges that his First Amendment rights were violated when his prescription for pain medication was discontinued by Defendant in retaliation for grievances he filed against her. On October 2, 2014, Defendant filed a Motion for Summary Judgment. ECF No. 53. For the reasons discussed below, the Court grants Defendant's motion.

## STANDARD OF REVIEW

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment

motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

## FACTUAL BACKGROUND[1]

On October 20, 2008, while Plaintiff was incarcerated at McNeil Island Corrections Center, the Washington State Department of Corrections (DOC) Medical Care Review Committee (CRC) approved a prescription for Plaintiff's use of Baclofen, a muscle relaxant, to treat his neck and back pain. ECF Nos. 12-2 ¶ 8, 12; 12-4; 54 ¶ 29, 30. The CRC concluded that Baclofen was "medically necessary" to Plaintiff's course of treatment. ECF No. 12-4. Subsequently, on

---

[1] A verified complaint, based upon personal knowledge and setting forth specific facts admissible in evidence, can be used as an opposing affidavit in evaluating motions for summary judgment. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff's First Amended Complaint was verified because Plaintiff stated under penalty of perjury that the contents were true and correct. ECF No. 12-2 at 7; *see also Schroeder*, 55 F.3d at 460 n.10. As such, the Court treats the First Amended Complaint as Plaintiff's affidavit for purposes of evaluating Defendant's Motion for Summary Judgment.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 3

May 7, 2009, Plaintiff's McNeil Island health care provider renewed Plaintiff's Baclofen prescription for a further year based upon the prior CRC approval. ECF Nos. 12-2 ¶ 11; 12-7 at 2.

The Medical Care Review Committee is a body of primary care physicians, physician assistants, and advanced registered nurse practitioners within the Washington State Department of Corrections, constituted to review and authorize proposed health care for offenders housed within a cluster of DOC facilities. *See* ECF No. 56, Declaration of Dr. Hammond, Chief Medical Officer of the Washington State DOC.

On July 23, 2009, Plaintiff was transferred to the AHCC. ECF Nos. 12-2 ¶ 12; 54 ¶ 34. Plaintiff's health care was provided in part by Defendant Kim Dotson, a Correctional Health Care Specialist 2 for the DOC. ECF No. 54 ¶ 35. On July 29, 2009, Plaintiff filed a grievance against Defendant alleging she was deliberately indifferent to his medical needs. ECF Nos. 12-2 ¶ 13; 12-8; 54 ¶ 45. The grievance was found to be unsupported at all levels of review. ECF No. 12-8.

On July 31, 2009, Plaintiff filed an emergency grievance against Defendant when she did not refill Plaintiff's prescription for ibuprofen. ECF Nos. 12-2 ¶ 14; 12-9; 54 ¶ 46. Defendant had noted in Plaintiff's medical chart on July 29, 2009, that Defendant's ibuprofen could be filled from the AHCC store. ECF No. 55-1 at 3. On July 31, 2009, after the grievance was filed, Defendant noted in Plaintiff's

medical record that, on further review, Plaintiff's previous prescription for ibuprofen was for 800mg pills. ECF No. 55-1 at 4. Plaintiff could not purchase 800mg pills at the AHCC store. ECF No. 55 ¶ 8. Defendant then approved Plaintiff's prescription for ibuprofen based on Plaintiff's previous use. ECF No. 55-1 at 4.

Plaintiff's medical notes from August 19, 2009, state that Defendant reviewed the CRC's August 20, 2008 approval of Baclofen. ECF No. 55-1 at 5. She noted that the CRC's conclusion that Baclofen was medically necessary was "based on the formulary prior to changes. Will need to be resubmitted [for] eval[uation]. Current order valid through May 2010. Reviewing chart shows this has been discussed [with Plaintiff] in the past on 4-16-09." *Id*.

On August 20, 2009, Plaintiff sent a letter to the superintendent of the AHCC complaining about Defendant's conduct and requesting a different health care provider. ECF No. 12-11. Plaintiff wrote a second letter to the superintendent complaining of Defendant on August 21, 2009. ECF No. 12-10. All told, in the month after Plaintiff arrived at the AHCC he filed two formal grievances and wrote two letters to the superintendent complaining of Defendant's actions and/or inaction.

The CRC reviewed Plaintiff's Baclofen prescription on September 16, 2009. ECF No. 55-4. Plaintiff's medical chart notes that Defendant "[p]resented to CRC

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 5

for continuation of chronic muscle relaxers. Majority consensus was against the requested therapy." ECF No. 55-1 at 15. A written report summarizes the CRC's review:

> Patient has [history] of chronic [lower back pain] and neck pain. X-ray results were reviewed with the group. He has chronic neck and back changes. Physical exam was unremarkable. Patient was previously approved for muscle relaxants but the criteria has changed since he was approved. Patient does not meet the new criteria/guidelines for chronic muscle relaxers. The provider will tapper [sic] the medication.

ECF No. 55-4. The Voting Members present at the CRC review were

> Mary Colter, MD; Lisa Anderson, MD; Jackie Shuey, PA-C; Megan Herdener, ARNP; Pamalyn Saari, ARNP; David Kenney, MD; Paula Thrall, ARNP; Nelson Antoniuk, MD; Elizabeth Suiter, MD; Inda Hertz, PA-C; Cliff Johnson, DO; Joseph Lopin, MD; Cathy Baum, ARNP; William Rollins, MD; Ed Lopez, PA-C; James Edwards, MD; Ken Moore, PA-C; Glen Silver, ARNP; Hany Elkaramany, MD.

*Id.* Defendant was not a member of the CRC. The report is signed by Dr. Frank John Smith, Defendant's supervisor, and the signature is dated October 1, 2009. ECF Nos. 12-2 ¶ 22; 55-4; 71 ¶ 7.

Plaintiff's Baclofen prescription was tapered-off for twenty-five days before it was discontinued. ECF Nos. 54 ¶ 66; 55 ¶ 14. Plaintiff states he has suffered wildly fluctuating pain since the prescription was discontinued. ECF No. 12-2 ¶ 25.

//

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 6

## DISCUSSION

Plaintiff filed a 42 U.S.C. § 1983 claim contending that Defendant discontinued his Baclofen as unlawful retaliation for the grievances he had filed against her. To establish a § 1983 claim, a claimant must prove "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that 'causes' the deprivation of which [the plaintiff complains]." *Id.* at 633 (brackets in the original) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

The parties do not dispute that Defendant was acting under color of state law while she was Plaintiff's health care provider at the AHCC. *See West v. Atkins*, 487 U.S. 42, 54 (1988) ("[T]he medical treatment of prison inmates by prison physicians is state action."). The Court therefore turns its attention to whether Defendant committed an act or participated in an act that deprived Plaintiff of some right, privilege, or immunity.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) and *Barnett v. Centoni*, 31 F.3d 813, 815–16 (9th Cir. 1994)).

Defendant concedes that Plaintiff was engaged in protected conduct in filing grievances. ECF No. 53 at 13. Defendant also concedes that, should the Court determine that Defendant took adverse action against Plaintiff, it would have had a chilling effect on Plaintiff's exercise of his First Amendment rights. *Id.* Defendant contends, however, that summary judgment is nevertheless appropriate in this case because Plaintiff cannot show that (1) Defendant took an adverse action against Plaintiff, (2) Defendant's actions were motivated by Plaintiff's protected conduct, and (3) the discontinuation of Baclofen was not done to advance a legitimate penological goal. *Id.* The Court reviews each of Defendant's contentions in turn.

//

## Adverse Action

To succeed in his claim, Plaintiff must show that Defendant took adverse action against him. *Watison*, 668 F.3d at 1114. Plaintiff contends that the adverse action in this case was the actual discontinuation of his Baclofen medication. *E.g.*, ECF No. 67 at 8. The Court must therefore inquire whether the record, taken in the light most favorable to the Plaintiff, contains evidence from which a reasonable factfinder could conclude that Defendant, acting on her own or in concert with others, discontinued Defendant's medication. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (quoting *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003) (per curiam)).

The record shows that Defendant initiated a CRC review of Defendant's Baclofen prescription. ECF Nos. 55 ¶ 10 ("[O]n August 26, 2009, I submitted a consult to the [CRC] for [Plaintiff] to have chronic muscle relaxers (baclofen) to be considered at a subsequent meeting of the [CRC]."); 55-1 at 5. Defendant's supervisor, Dr. Frank John Smith, supported resubmitting the prescription to the CRC for review. ECF No. 58 ¶ 5.

The record also indicates that during the CRC review Defendant proposed that the CRC *continue* Plaintiff's use of Baclofen. Defendant's September 16, 2009, note in Plaintiff's medical chart states that she "[p]resented to CRC for continuation of chronic muscle relaxers." ECF No. 55-1 at 15. Chief Medical

Officer for the DOC, Dr. Steven Hammond, who chairs the CRC meetings, stated that Defendant presented Plaintiff's medical condition to the CRC, "proposing the continued intervention of baclofen." ECF No. 56 ¶ 11. More importantly, the final decision to discontinue Plaintiff's medication was not made by Defendant as she was not a voting member of the CRC.[2] ECF No. 55-4. The CRC report states that the voting members determined to discontinue the medication because Plaintiff did not meet the "new criteria/guidelines for chronic muscle relaxers." *Id.* The uncontroverted record shows Defendant did not induce the CRC's decision; she, in fact, opposed that decision.

In response, Plaintiff argues the CRC report is not credible, questioning whether such a meeting ever took place. ECF No. 67 at 11. Plaintiff contends that Defendant created the report herself to provide post-hoc justification of her own unilateral action to discontinue Plaintiff's Baclofen prescription. Plaintiff's argument is based upon the fact that the signature on the report is dated October 1, 2009; well after medical staff began to taper his baclofen.

Dr. Hammond explained in his affidavit that the CRC typically reviews between forty and seventy cases each Wednesday. ECF No. 70 ¶ 8, 9. Notes of

---

[2] Nor does Defendant have any authority to override the decision of the CRC. See ECF No. 56 at ¶ 8.

1  the CRC's discussion and decision for each case are kept by two nurses based at
2  DOC Headquarters, who later compile the notes into a written report for each case.
3  *Id.* ¶ 9.  Those reports are then distributed to the various DOC institutions for
4  approval by the treating physician of each inmate.  *Id.*; ECF No. 71 ¶ 5.  Both Dr.
5  Hammond and Dr. Smith stated that, given the number of cases reviewed, a
6  fifteen-day delay from the time of the CRC hearing to the time that a written CRC
7  report is received and reviewed by a treating physician is not unusual.  ECF Nos.
8  70 ¶ 10; 71 ¶ 7.  Dr. Smith averred that he reviewed and signed Plaintiff's report
9  immediately after receiving it.  *Id.* ¶ 6.  The signature on the document reads as "F
10 John Smith MD."  ECF No. 55-4.
11      The Court concludes there is no genuine factual dispute as to whether the
12 CRC held a medical review on September 16, 2009, or who wrote and who signed
13 the report.  Defendant has presented evidence demonstrating that the CRC review
14 occurred, that the report was written by a nurse at the DOC headquarters, and that
15 Dr. Smith signed the report when he received and reviewed it.  Defendant has met
16 her initial burden to demonstrate the absence of any genuine issues of material fact.
17 *Celotex Corp.*, 477 U.S. at 323.  Plaintiff bears the burden of identifying specific
18 genuine issues of material fact which must be decided by a jury.  *Liberty Lobby*,
19 477 U.S. at 256.  Plaintiff has not presented any evidence disputing Defendant's
20 evidence.  Even viewing the record in the light most favorable to the Defendant, as

the Court must, no reasonable inference could support his contentions that the CRC report was a sham or that Defendant wrote and signed the report herself. Defendant's view of the facts is pure speculation. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). No reasonable jury, relying on the evidence in the record, could determine that Defendant created the report herself or that the CRC review was just a fiction. As such, there is no "genuine" factual dispute. *See Liberty Lobby*, 477 U.S. at 248.

Given that conclusion, the Court further determines that Defendant cannot, as a matter of law, establish that Defendant took any adverse action against him, either on her own or in concert with the CRC. Defendant is entitled to summary judgment on the issue of whether she took adverse action against Plaintiff.

### Causation

Plaintiff must also show "a causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. In arguing causation, Plaintiff points to the fact that his Baclofen was discontinued after he had filed two grievances and sent two letters to the superintendent complaining about Defendant, and one day after Defendant met with Dr. Smith and others to discuss the problems she was having with Plaintiff. ECF Nos. 67 at 11–12 (Plaintiff's causation argument); 55-1 at 15 (medical note recording meeting on September 15, 2009).

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 12

"[T]iming can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also Watison*, 668 F.3d at 1114 ("[A]llegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."). Ultimately, however, Plaintiff must show that in the totality of the circumstances retaliation was a substantial or motivating factor in Defendant's decision to discontinue his Baclofen. *CarePartners, LLC v. Lashwa*, 545 F.3d 867, 877 (9th Cir. 2008).

Because Plaintiff has offered no evidence of Defendant's intention beyond the timeline of events and fails to show that it was Defendant's decision to discontinue the Baclofen, Defendant is entitled to summary judgment on this issue as well.

### Legitimate Penological Goal

In *Turner v. Safley*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). In determining whether a prison regulation is reasonably related to a legitimate penological interest, courts examine four factors established in Turner:

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and

> (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*Ashker v. California Dept. of Corrections*, 350 F.3d 917, 922 (9th Cir. 2003) (citations omitted). Prison officials must "put forward" a legitimate governmental interest to justify their regulation and must provide evidence that the interest proffered is the reason why the regulation was adopted or enforced. *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted). In the retaliation context, Defendant may present evidence establishing the existence of legitimate penological reasons for the alleged retaliatory conduct. *See Pratt*, 65 F.3d at 807 ("[W]e should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). If Defendant establishes the existence of a legitimate penological goal for the alleged adverse action, Plaintiff then bears the burden of "proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806; *Barnett*, 31 F.3d at 815–16.[3]

---

[3] Plaintiff tends to conflate the CRC's actions and those of Defendant. However, Plaintiff has not established that Defendant acted in concert with the CRC, and thus, the CRC's actions cannot be attributed to Defendant.

Here, Defendant has proffered the lack of efficacy and medical necessity for prescribing Baclofen given Plaintiff's medical condition, as the legitimate penological reason for its discontinuation by the CRC. *See* Declaration of Dr. Hammond, Chief Medical Officer, ECF No. 56. It is also self-evident that the CRC's overall regulation of prescription pain medication is a legitimate penological goal. *See Peace v. Caldwell*, 892 F.2d 1046 (9th Cir. 1990) (unpublished) (prison has a legitimate penological interest in preventing inmates from hoarding medications); *Todd v. Bigelow*, 497 Fed.Appx. 839, 841-42 (10th Cir. 2012) (prevention of drug abuse); *Chavers v. Wash. State Penetentiary*, 2013 WL 6086149 (E.D. Wash. 2013) (legitimate penological goal of limiting the use of restricted drugs where not medically necessary), *aff'd in relevant part*, 2014 WL 4978327 (9th Cir. 2014). Plaintiff does not argue otherwise. Instead, Plaintiff argues that discontinuation of his prescription was not, in fact, done to advance the goal of regulating pain medication.

Plaintiff's Baclofen prescription was first evaluated by the CRC in August 2008. ECF No. 12-4. At that time, the Formulary in the DOC manual of Pharmaceutical Management identified Baclofen as a Level I drug with no special

information provided regarding its use.[4]  ECF No. 70-1 at 3.  This manual was in effect from January 2008 until September 4, 2008.  ECF Nos. 70-1 at 1; 70 ¶ 5.

However, in the summer of 2008 DOC Health Services was working on general policy changes for the use of muscle relaxers.  ECF No. 70 ¶ 6 (Hammond Declaration).  Health Services concluded that there was no evidence of therapeutic long-term benefits from treating musculoskeletal disorders with muscle relaxers, Baclofen in particular.  *Id.*  Instead, Health Services concluded that muscle relaxers like Baclofen had a high abuse potential in correctional settings.  *Id.*  As such, Health Services altered the Formulary to indicate the muscle relaxers should only be used long-term to treat neurological conditions, like multiple sclerosis and spinal cord injuries, that involve objectively-verifiable muscle spasticity.  *Id.*  The use of muscle relaxers for musculoskeletal conditions was limited to two weeks.  *Id.*  The Formulary was revised on September 4, 2008.  ECF Nos. 56-2 at 1; 70 ¶ 7.  In the new Formulary, Baclofen is listed as a Level II drug, "[a]pproved for MS and spinal cord injury."  ECF No. 56-2 at 3.

Level I medical care is that which is routinely authorized where appropriate.  ECF No. 56-1 at 14 (Health Services Offender Health Plan).  Level II medical care

---

[4] The Formulary is a chart identifying a drug, its status level, any special instructions for its use, and other information related to prescribing that drug.

1 is that which is "medically necessary . . . under certain clinical circumstances." *Id.*
2 Care is medically necessary if, among other criteria, it is delivered according to the
3 DOC's guidelines. *Id.* at 11. Level II pharmaceuticals are authorized according to
4 the DOC's Pharmaceutical Management manual and its attached Formulary. *Id.* at
5 28.

6 Plaintiff contends, first, that the 2009 CRC review, applying the revised
7 guidelines, did not advance the penological goal of regulating pain medication
8 because the prescription he had upon arriving at the AHCC was issued by a health
9 care provider at McNeil Island on May 7, 2009, months after the Formulary was
10 revised. ECF No. 67 at 13. Essentially, Plaintiff is contending that if the CRC
11 truly discontinued his prescription in September 2009 because of the Formulary
12 change, then he would have already had his prescription discontinued in May
13 2009. Therefore, he continues, the CRC did not truly discontinue his prescription
14 based on the revised Formulary.

15 Plaintiff's argument, however, is not logically sound. His prescription for
16 Baclofen was renewed by a physician assistant on May 7, 2009, with a simple
17 notation that the prescription for Baclofen had "prior CRC approval." ECF No.
18 12-7 at 2. The fact that the physician assistant summarily relied upon the prior
19 CRC review has no bearing on the reason Plaintiff's prescription was discontinued
20 in the subsequent CRC review.

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 17

1         Plaintiff argues certain other facts create "suspicion" about whether

2   discontinuation of his prescription was truly done to advance legitimate

3   penological goals.  ECF No. 67 at 13.  First, Plaintiff asserts that Defendant never

4   informed him she was submitting the prescription to the CRC for review.  Second,

5   he asserts that Dr. Smith told him initially that the CRC discontinued his

6   prescription because muscle relaxants were only approved for a two-week use—

7   Plaintiff appears to take issue with the fact that Dr. Smith did not mention the

8   neurological disorder restrictions.  From these facts, Plaintiff asserts the

9   discontinuation of his prescription was suspicious.

10        Plaintiff's suspicions are not sufficient to establish genuine issues of

11  material fact warranting his claims to proceed to trial.  *See Nelson*, 83 F.3d at

12  1081–82.  Defendant had no obligation to inform Plaintiff that she was submitting

13  his prescription for CRC review and no inference can reasonably be drawn to

14  indicate Defendant was not acting in accordance with DOC guidelines.  Likewise,

15  no reasonable inference can be drawn from Dr. Smith's statement that Baclofen

16  can only be used for musculoskeletal conditions for two weeks.  The CRC report

17  clearly states that Plaintiff's prescription was discontinued because the Baclofen

18  "criteria has changed since he was approved" and Plaintiff "does not meet the new

19  criteria/guidelines for chronic muscle relaxers."  ECF No. 55-4.  Dr. Smith's

20  subsequent statement—which only notes an exception to the general rule that

Baclofen may not be prescribed for musculoskeletal disorders—does not change the fact that the CRC was acting in accordance with the DOC's prescription drug guidelines in discontinuing Plaintiff's Baclofen prescription.

The DOC has a legitimate penological goal in regulating prescription pain medication to avoid drug abuse. In furtherance of that goal, the DOC revised its Baclofen guidelines. The CRC then discontinued Plaintiff's prescription because his Baclofen use did not fall within the guidelines identified in the revised Formulary. There simply is no evidence in the record from which a reasonable factfinder could conclude that Defendant retaliated against Plaintiff. Defendant is entitled to summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion for Summary Judgment (ECF No. 53) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order, provide copies to Plaintiff and Defendant's counsel, enter **JUDGMENT** for Defendant on all claims, and **CLOSE** the file.

**DATED** December 22, 2014.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION ~ 19